J-S13027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DOUGLAS DALE KESECKER | : | |
| | : | |
| Appellant | : | No. 356 MDA 2024 |

Appeal from the PCRA Order Entered March 7, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000271-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DOUGLAS DALE KESECKER | : | |
| | : | |
| Appellant | : | No. 357 MDA 2024 |

Appeal from the PCRA Order Entered March 7, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000273-2019

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:         **FILED: JULY 16, 2025**

Douglas Dale Kesecker appeals from the order denying his first petition filed pursuant to the Post Conviction Relief Act (PCRA). 42 Pa.C.S.A. §§ 9541-46. We affirm.

The pertinent facts have been previously summarized in detail as follows:

The charges against [Kesecker] stem from alleged incidents investigated by the Newberry Township Police [D]epartment between November 21, 2018, and December 28, 2018. On November 21, 2018, the victim, Loretta Bailey ("Ms. Bailey"), found that $100 cash, a check for $7,500, and a gift card were missing from her wallet, and then she found [Kesecker] hiding in her bathroom later that evening. [Kesecker] advised Ms. Bailey that he parked up the street and entered Ms. Bailey's home through a sliding glass door because he knew that [she] would not let him inside otherwise. On November 22, 2018, Ms. Bailey's vehicle had been keyed and the tires slashed, and later that day the word "slut" and other profanities were spray painted on her vehicle and house, and [Kesecker] eventually apologized to Ms. Bailey for vandalizing her vehicle. However, during trial, [Kesecker] denied vandalizing Ms. Bailey's home and vehicle.

During the early hours of December 10, 2018, the Newberry Township Police [D]epartment was dispatched to Ms. Bailey's residence to investigate noises [she] heard outside her home. At this time, Ms. Bailey advised the [o]fficers that she recently found a camera in her bedroom to which [Kesecker] admitted placing in Ms. Bailey's residence. Further, Ms. Bailey informed the [o]fficers that she received a text message from [Kesecker] asking if she had completed her paperwork as [Ms. Bailey] was working alone in her home. Later that evening, Ms. Bailey received a "goodnight" text message from [Kesecker] as she was getting ready for bed. Ms. Bailey found a camera, which appeared to be the same camera that she previously found in her bedroom that belonged to [Kesecker], in her living room.

In addition, Ms. Bailey told the officers that on December 3, 2018, [Kesecker] entered her residence, took her gun, and chased her while spraying her face with pepper spray and waving her gun towards her, however [Kesecker] denie[d] having pepper spray and waving a gun at Ms. Bailey. While being chased, Ms. Bailey fell to the ground and [Kesecker] grabbed her by the coat and said, "You're coming with me." [Kesecker] smashed Ms. Bailey's security box in a fit of rage during this incident. Further, [Kesecker] repeatedly took and then returned Ms. Bailey's phone from her, and at one point Ms. Bailey notified friends and family that she needed help via text message. [Kesecker] acknowledge[d] being in Ms. Bailey's home on this date, but claims he was helping [her] get up by grabbing her jacket, and also that he merely asked [Ms. Bailey] to leave with him.

- 2 -

At 1:16 p.m. on December 10, 2018, the Newberry Township Police [o]fficers were dispatched to Ms. Bailey's residence after [she] called [them] to report that Jennifer Kibler, her cousin's girlfriend, saw a man on Ms. Bailey's front porch while Ms. Bailey was at work. The [o]fficers received another call from Jennifer Kibler at 1:19 p.m. reporting that Ms. Bailey's residence was on fire, and also that she saw a maroon SUV leaving the residence just before she noticed the fire. The home and the contents inside the home suffered extensive damage from the fire. Ms. Bailey's home and her personal belongings were ultimately destroyed in the fire. Fire [Marshal], Colby Shesko, ruled the fire as "incendiary in nature," and found that the fire was not accidental through his investigation, and further identified that the fire originated on a couch in Ms. Bailey's living room. [Kesecker] showed up at his ex-girlfriend's, Deborah Loreman['s], house around 5:00 p.m. on December 10, 2018, where here appeared nervous and repeatedly checked his voicemails.

The [o]fficers located and recovered as evidence a trail camera that Ms. Bailey had installed prior to the fire on the exterior of her home. The images on the security camera show a male carrying a red plastic fuel canister as well as a plastic sprayer full of what appear[ed] to be gasoline. After review of the images, the [o]fficers were able to conclude that the subject seen in the images was a white male, consistent with [Kesecker].

On December 14, 2018, the Newberry Township Police Department located a red Chevy Equinox matching the description of the suspect's vehicle seen by Jennifer Kibler, and upon investigation found that the vehicle was . . . registered to Enterprise as a rental vehicle. The Newberry Township Police Department obtained a search warrant for the suspect's vehicle, and found two gas cans, a blue [R]hino tank full of gasoline, and a bug sprayer in the trunk of the vehicle. A rental agreement provided by a records keeper from Enterprise confirmed that the apprehended red Chevy Equinox was rented by [Kesecker] on December 10, 2018, at 11:23 a.m.

Trial Court Opinion, 8/4/21, at 1-5 (unnumbered) (footnotes omitted).

On December 28, 2018, Kesecker was charged at two separate dockets:

at No. CP-67-CR-0000271-2019, Kesecker was charged with attempted

kidnapping and related charges; and, at CP-67-CR-0000273-2019, Kesecker was charged with arson and related charges. The dockets were consolidated for trial and, on April 29, 2021, a jury convicted Kesecker on all charges, except defiant trespass and simple assault. On May 26, 2021, the trial court imposed an aggregate sentence of 220–440 months of imprisonment. Kesecker filed a timely post-sentence motion, in which he included a general claim that his sentence was excessive.

Following the denial of his motion, Kesecker filed a timely appeal to this Court, in which he raised a single sufficiency challenge regarding his theft conviction of Ms. Bailey's gun. Finding no merit to this claim, we affirmed Kesecker's judgment of sentence on July 22, 2022. *Commonwealth v. Kesecker*, 283 A.3d 357 (Pa. Super. 2022) (non-precedential decision).

On August 9, 2023, Kesecker filed a timely, counseled PCRA petition in which he asserted that trial counsel was ineffective for failing to properly and adequately preserve his ability to challenge the discretionary aspects of his sentence on appeal. The PCRA court held an evidentiary hearing on March 6, 2024, at which trial counsel and appellate counsel testified. By order entered March 7, 2024, the PCRA court denied Kesecker's petition. This appeal followed. On March 11, 2024, at 1:07 p.m., the PCRA court ordered Kesecker to file an Appellate Rule 1925(b) statement of errors complained of on appeal within twenty days. On April 1, 2024, (the 21st day after the order was entered), Kesecker filed his Rule 1925(b) statement at 4:31 p.m. In its Appellate Rule 1925(a) opinion, the PCRA court determined that Kesecker's

statement was untimely because it was three hours late. The court further stated that, if this Court deems the statement timely, the court relied on its March 7, 2024 order denying post-conviction relief.

Kesecker raises the following two issues on appeal:

1. Did the PCRA court err when, in its [R]ule 1925 Opinion, it opined that [Kesecker's] appellate issues are waived for failing to file a timely Rule 1925 statement even though the statement was filed on the twenty-first day after the 1925 order was issued?

2. Did the PCRA court err when it denied [Kesecker's] PCRA claim of [trial] counsel's ineffectiveness for failing to preserve a challenge to [Kesecker's] sentence when he filed a post-sentence motion to reconsider [Kesecker's] sentence that did not adequately preserve a challenge to [Kesecker's] sentence?

Kesecker's Brief at 2.

This Court's standard of review for an order dismissing a PCRA petition is to ascertain whether the order "is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

In his first issue, Kesecker asserts that the PCRA court erred in finding his Rule 1925(b) statement untimely because it was three hours late. According to Kesecker, such a "position is not supported anywhere by any statute, regulation, or rule, and is in fact contrary to an Administrative Order from the Pennsylvania Supreme Court." Kesecker's Brief at 5.

The Commonwealth concedes that the PCRA court's finding of untimeliness was in error. ***See*** Commonwealth's Brief at 4 n.1. We agree. Our review of the docket entries reveals Kesecker filed his statement electronically. Criminal Rule 576.1(E)(2) provides that "an electronic filing must be completed by 11:59:59 p.m. EST/EDT to be considered filed that day." ***See also*** Pennsylvania Rule of Judicial Administration 107(a) (providing that "when any period of time is referred to in any rule, such period . . . shall be computed to exclude the first and include the last day of such period"). Given this rule, Kesecker's statement was timely, and we proceed to address the merits of Kesecker's remaining issue.

In his second issue, Kesecker challenges the effectiveness of trial counsel.[1] To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." ***Id.***

---

[1] At the PCRA hearing, appellate counsel testified that he did not raise a challenge to the discretionary aspects of Kesecker's sentence on appeal because he did not believe trial counsel adequately preserved the claim. ***See*** N.T., 3/6/24, at 12.

The tripartite test we apply is well-settled, and each prong of the test has been explained as follows:

> The burden is on the [petitioner] to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel has no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.
>
> We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.
>
> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted; formatting altered).

Kesecker asserts that trial counsel was ineffective for failing to file a motion for reconsideration of his sentence that would have preserved his discretionary sentencing challenge. According to Kesecker, prejudice should be presumed, but if not, he "still demonstrated prejudice under the ineffective assistance of counsel inquiry." Kesecker's Brief at 6.

In **Commonwealth v. Reaves**, 923 A.2d 1119 (Pa. 2007) our Supreme Court addressed whether a PCRA petitioner whose counsel failed to file a motion to reconsider sentence suffered prejudice. The Superior Court had "summarily concluded" that prejudice was presumed because counsel's inaction "effectively waived [Reaves'] right to challenge this issue on appeal." **Reaves**, 923 A.2d at 1123 (citing **Reaves**, 3190 EDA 2003, unpublished memorandum at 4-5).

Our Supreme Court disagreed. Instead, the Court held that a PCRA petitioner raising a claim of ineffectiveness regarding counsel's failure to file a motion for reconsideration must establish **actual** prejudice. **See Reaves**, 923 A.2d at 1130. Specifically, the Court held that a PCRA petitioner must show that filing the motion would have led to a more favorable sentence:

> The Commonwealth argues that the Superior Court's prejudice analysis misses the mark because the panel improperly focused on the effect of counsel's inaction upon the [**appeal**], rather than looking to the outcome of the underlying [proceeding] itself. The Commonwealth is correct. Although contemporaneous objections operate to preserve issues for appellate review, they serve an equally important function in **obviating** appeals by affording the trial court a timely opportunity to correct mistakes and/or to reconsider decisions. Whether [counsel] can be deemed ineffective, then, depends upon whether [a defendant] has proven that a motion to reconsider sentence if filed . . . would have led to a different and more favorable outcome at [sentencing]. In this context, the only way the proceeding would have been more favorable would be if counsel's objection secured a reduction in the sentence. The Superior Court panel erred as a matter of law in failing to appreciate the actual focus of the [actual] prejudice standard.

*Reaves*, 923 A.2d at 1131-32 (emphasis in original; footnote omitted).[2]

In *Reaves*, our Supreme Court further concluded that Reaves did not establish actual prejudice, since "[on] this record, there is no reason to believe that, if only counsel had asked for a statement of reasons for the sentence at [the time of sentencing], that statement or explanation alone would have led the court to reduce the sentence"). *Id.* at 1132.

Here, we agree with the PCRA Court that Kesecker failed to establish actual prejudice. Our Supreme Court in *Reaves* rejected a PCRA petitioner's claim of actual prejudice based merely upon counsel's failure to preserve an appellate issue. Moreover, in its order denying post-conviction relief the PCRA court explained:

> [T]he sentence is legal and within the guidelines. Further, [the trial court's] reasoning for such sentence is laid out clearly and at length on the record of the sentencing transcript. Failing to preserve a meritless issue for appeal is not ineffective on the part of trial counsel. Accordingly, [Kesecker's] PCRA claim necessarily fails if the underlying claim is without merit. Here, the [trial court] acted within its discretion in sentencing [Kesecker], for reasons stated on the record, to consecutive sentences on various charges in the aggravated range of the guidelines. A challenge to this sentence, frankly, would have been without merit. Failing to preserve such a meritless claim is not ineffective.

Order, 3/7/24, at 1-2 (unnumbered) (footnotes omitted).

Our review of the sentencing transcript supports the PCRA court's conclusion. On appeal , Kesecker puts forth various arguments about why he

---

[2] Tellingly, to support his claim of presumed prejudice, Kesecker cites the dissenting opinion in *Reaves*. *See* Kesecker's Brief at 11 n.3.

believes his sentence is excessive. *See* Kesecker's Brief at 14-16. Nonetheless, Kesecker cannot establish that the trial court would have given a reduced sentence had trial counsel properly raised and preserved the sentencing claim. Given these circumstances, the PCRA court did not err in dismissing Kesecker's claim of trial counsel's ineffectiveness.

In sum, although Kesecker's Rule 1925(b) statement was timely, his ineffectiveness claim fails because he cannot establish prejudice. *Reaves*, *supra*. We therefore affirm the PCRA court's order denying post-conviction relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/16/2025